A. S. CLEGHORN, Collector of Customs, *vs.* 500 BOTTLES OF OPIUM PILLS.

APPEAL FROM JUDD, C.J.

HEARING, MARCH 14, 1892. DECISION, MAY 28, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

In an invoice of Chinese goods there was found a case of pills containing opium. Held, that the said case, together with all the merchandise named in the same invoice, was forfeited and confiscated to the use of the Hawaiian Government.

DECISION OF JUDD, C.J., APPEALED FROM.

The invoice of goods imported by Quong Sam Kee Company per bark Kitty from Honkgong, China, was entered at the Custom House in Honolulu on December 2d, 1891, by Chu Gem, manager of the importing firm. Chu Gem stated to the Deputy Collector that the pills in case No. 18 on the invoice, calling for "China pills," he believed to be opium pills and struck them off from the invoice, the case to be surrendered to the Government. The case was taken by mistake to the claimant's store and by him sent to the Custom House.

Case marked 101 was invoiced as containing "500 pieces China pills valued at $15, 10 pair flower shoes, $8.20, 1 piece ash flowers, 10 cents." This case was seized on board the vessel by the Customs officer, and on examination found to contain medicinal pills containing opium, and the whole invoice of goods, valued at $1,828.85, was seized, less what packages had been delivered to the importer before seizure.

The object of this libel is to forfeit and condemn to the use of the Government the case of pills and the entire invoice, of which the pills formed a part.

These pills purport by their label to be a remedy for the opium habit. The chemist (G. W. Smith) who analyzed them says they contain some vegetable extracts, etc., and a small quantity of opium, and would produce in the taker the effects of opium, in a greater or less degree, according to the quantity taken. The printed prescription says the dose is 20 pills for each "mace" of opium which the taker has been in the habit of using. Can these pills be said to be a "preparation of opium?" The chemist did not make a quantitative analysis of the pills, but says they respond to the test of opium. The quantity of opium evidently bears a small proportion to the other ingredients in the pills. And it seems to me that the compound could hardly be called in a strict sense a "preparation of opium." It would be more appropriately named after its principal ingredient, which is probably "ginseng." But the Legislature, in forbidding the "importation of opium or any preparation thereof," evidently intended to exclude from this Kingdom any compound which contains opium and which is intended to be used as a narcotic. Therefore, as the use of these pills is within the evils sought to be prevented by the law, I hold that they are a "preparation of opium."

Not only is their importation by private parties forbidden, but by the Act of 1886 (Section 3, Chapter 7) if they are "found in any ship within the limits of any part of this Kingdom, such goods and articles, and the packages containing the same, and all merchandise or part of the invoice in which such goods and articles were imported, shall be forfeited."

This case of pills was found in the bark Kitty at the dock in the harbor of Honolulu, and, by a strict construction of the statute, it and the invoice of which it is a part are forfeited. The Deputy Attorney-General contends for this construction and urges that the prosecution has not to show guilty knowledge or a fraudulent intent, to secure a forfeiture. I agree with this contention. But the claimant may show by the facts of the case that he did not intend to violate the law and import the prohibited article. He shows correspondence with his agent in Hongkong in which he countermands the orders previously sent

for opium pills. The letter reached China after the Kitty had sailed for Honolulu. He says he believed case No. 18 contained the prohibited pills and surrendered it to the Custom House, and supposed case 101 contained "common pills," not having opium in them. He dealt in medicines and had ordered common pills.

A strict construction of the statute would condemn the whole invoice on account of the presence therein of case 18, which the importer repudiated and delivered to the Customs. If the prohibited article was sent in an invoice, incontestably without the knowledge of the importer, by the construction contended for the innocent importer would be punished for the misdeeds of the guilty consignor.

The presumption, of course, will always exist that the importer is aware of the contents of the cases in his invoice. But to say that this presumption cannot be repelled by evidence would be unjust. The proceeding for condemnation is of a criminal character ; a forfeiture of his goods punishes the importer as well as a fine would. The rule of law is that the offense must be established beyond a reasonable doubt. *U. S. vs. The Brig Burdett*, 9 Peters, 682.

Those pills in case 18 differ in appearance from those in case 101. The conduct of the claimant importer throws a serious doubt upon the question of his knowledge that the pills in case 101 contained opium.

I therefore declare forfeit case 101 and contents and release the rest of the invoice. The claimant to pay costs.

I have not touched upon the alleged undervaluation of the peanut oil in the invoice, because it is not made a ground of condemnation in the libel, and moreover the evidence is that $5 in U. S. gold per case would be about the value of the article in Hongkong in Mexican silver.

OPINION OF THE FULL COURT, BY BICKERTON, J.

The question now before us is, should all the merchandise and packages described in the invoice be confiscated as well as case 101, or is the case containg the pills only liable to forfeiture.

This proceeding is brought under Chapter 7, Section 3, of the Session Laws of 1886, which reads : "If any goods or articles, prohibited from being imported by any private persons, shall be found in any ship within the limits of any port of this Kingdom, such goods and articles, and the packages containing the same, and all merchandise or part of the invoice in which such goods and articles were imported, shall be forfeited." * *

The facts necessary to bring this case within that statute have been clearly shown, in fact they are practically admitted by the claimant. The language of this law is plain and unambiguous; it is peremptory ; it is only capable of one construction, viz., the articles (in this case opium pills) and the packages containing the same shall be forfeited, also all the remainder of the merchandise in the invoice in which the articles and goods were imported shall also be forfeited. This is the law as we find it on the statute book ; we cannot legislate or vary the law. It may perhaps in some cases work a hardship, but the claimant is not without means of relief. Section 689, Compiled Laws, reads : "Any person who has incurred any fine, penalty or forfeiture, for a breach of any provision of the revenue laws, or is interested in any vessel, or merchandise subject to seizure, forfeiture, or disability, may petition the Minister of Finance, setting forth the circumstances of his case, and praying that the same may be mitigated or remitted, and the said Minister may mitigate or remit such fine, forfeiture or penalty, or remove such disability or any part thereof, and he may direct any prosecution for such fine, penalty or forfeiture, to be discontinued upon such terms as he may deem reasonable."

Under this law, if there are mitigating circumstances, as perhaps there are in this case, it is in the power of the Minister of Finance to grant what relief he may deem right and just in the matter ; this is left to the discretion of the Minister and not to the Court. The Court can only administer the law as it finds it. In the case of *The Mary Belle Roberts*, 3 Hawn., 826, the Court quotes the language of Judge Ware in *The John C. Brooks*, 3 Ware, 273, where he says : "To extract this case from the express language of the statute, it must be shown that while the

Legislature said one thing it meant another. This may be shown, but it is incumbent upon him who alleges an exception to prove it." In the same case *( The Mary Belle Roberts,)* the point was raised, " Can the ship, which is the property of innocent third parties, be forfeited by the unlawful proceeding of the master?" The Court says, "It would be sufficient to make answer that the statute of this Kingdom expresses in language too plain to admit of other construction that such a penalty may be enforced." We can make the same answer to the question before us in this case. Immediately the case No. 101 was found on the bark " Kitty " it became liable to forfeiture together with the merchandise named in the same invoice, and that liability to forfeiture cannot be removed by any prior or subsequent act, either of the claimant or the customs. In the case of *Cleghorn vs. Samshoo*, 7 Hawn., 190, the Court says, " We all think that the goods having become liable to forfeiture immediately upon the offense, *i. e.*, the delivery of the manifest by the Master to the Collector-General, being committed, no action by any officer of the Government could purge such forfeiture."

We are therefore of opinion that the decision appealed from should be set aside and the prayer of the libel granted, forfeiting said case No. 101, together with all the merchandise and goods set forth in the invoice filed with the libel and marked as Exhibit A. And it is so ordered.

*Chas. Creighton*, Deputy Attorney-General, for libellant.

*Paul Neumann*, for claimant.